(C. D. 1651)

C. J. Tower & Sons *v*. United States

United States Customs Court, Third Division

(Decided November 4, 1954)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Harold L. Grossman* and *William J. Vitale*, trial attorneys), for the defendant.

Before Ekwall and Johnson, Judges

Johnson, Judge: This is a protest against the collector's assessment of duty on buttermilk powder, imported from Canada in April and May 1948, at 3⁄10 cents per pound under paragraph 708 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as dried buttermilk, containing more than 6 per centum of butterfat, and, therefore, dutiable as dried whole milk. It is claimed that the merchandise contained less than 6 per centum of butterfat and is, consequently, dutiable at 1½ cents per pound as dried buttermilk, under said paragraph, as modified.

The pertinent provisions of the tariff act and its modification are as follows:

PAR. 708. (b) Dried whole milk, 6½₂ cents per pound; * * * dried skimmed milk and dried buttermilk, 3 cents per pound: *Provided,* That dried skimmed milk containing more than 3 per centum of butterfat, and dried buttermilk containing more than 6 per centum of butterfat, shall be dutiable as dried whole milk; * * *.

PAR. 708. (b) [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]

Dried whole milk_____ 3½₀¢ per lb.
Dried skimmed milk and dried buttermilk_____ 1½¢ per lb.

The issues in this case are the same as those involved in *Central Vermont Railway, Inc.* v. *United States,* 8 Cust. Ct. 75, C. D. 581, the record of which was incorporated herein. In that case, the Government chemist analyzed the merchandise by the so-called Roese-Gottlieb method and found the butterfat content to be over 6 per centum. The plaintiff contended that the fatty extract of dried buttermilk obtained by that method included, in addition to the glycerides of fatty acids, lecithin and sterols, and that the proportion of the latter in excess of that found in the fatty extract of milk should be subtracted, the result being the true butterfat content. On the record presented, the court sustained the plaintiff's protest upon a finding that the method of analysis used by the plaintiff gave a more accurate result. In the course of the opinion, the court said (p. 80):

We think the testimony produced on the part of the plaintiff shows that something more must be done to the result obtained by the Roese-Gottlieb test in order to determine the true butterfat content of dried buttermilk. This is shown as a result of experiments undertaken by chemists engaged in research work, whose findings have been embodied in articles published in works cited by the plaintiff's witness.

While the witnesses on the part of the Government do not agree with this and consider the Roese-Gottlieb test sufficient, one of them stated that he was willing to accept the statements of plaintiff's witness that there is considerable difference in the fatty extract of buttermilk and the fatty extract of normal milk, and, while he doesn't know whether or not the range of limitation of lecithin in dried buttermilk is much greater than in normal milk, he was willing to accept the statement that such is the fact.

The court is loath to reject the findings of specialists in a particular field of science, and we are persuaded from the evidence produced that the method adopted by the Government chemists does not give as accurate a result as that outlined by the plaintiff's witness. This is particularly true in view of the fact that no long-continued customs practice connected with the analysis of dried buttermilk by the customs laboratories at the various ports of the United States has been shown. In fact, the evidence discloses that Government chemists have had very little occasion to examine the commodity dried buttermilk for the purpose of determining the butterfat content.

The point at issue is the butterfat content of the imported merchandise, which, in turn, involves the meaning of the term "butterfat," as used in the tariff act, and the accuracy of the methods of analysis employed. At the outset of the trial, it was agreed that the Government chemists had followed the prescribed United States Customs Laboratory method in making their determinations on the three lots of dried buttermilk involved herein, which method is known as the Roese-Gottlieb method. The results obtained are set forth .in reports attached to the official papers and show a butterfat content of 7.4 per centum, 7.0 per centum, and 7.3 per centum, respectively.

Copies of documents describing the United States Customs Laboratory methods for milk and milk products were received in evidence as plaintiff's collective exhibit 1. According to statements therein, the recognized official methods for determining the fat in milk and milk products make no allowance for the phospholipid and sterol contents of the fat of dried skim milk and dried buttermilk, no procedures being available for the accurate and precise determination of sterols and phospholipids in milk fat. Plaintiff claims that the method is inaccurate in that no such allowance was made. The basis of the dispute, therefore, is whether the "butterfat" of buttermilk is the fatty extract obtained by the Roese-Gottlieb method, which includes the phospholipins and sterols, or whether it is the fatty extract, less the proportion of phospholipins and sterols which is in excess of that found in normal milk.

At the trial, plaintiff called Dr. David Levowitz, who had testified in the earlier case. He is a chemist and director of the New Jersey Dairy Laboratories. He has served as consultant to various companies in work regarding the technical nature of dairy products and has been chairman of the Public Health Standards Committee of Dairy Industries Societies International, president of the Metropolitan Dairy Technology Society, and a member of committees of the International Association of Milk Sanitarians. He has also served as analyst or consultant to health departments of a number of towns in New Jersey and to the New Jersey Department of Agriculture. He has published articles concerning milk and milk products.

Dr. Levowitz testified as follows: Butterfat is the fatty extract of either normal whole milk or normal butter and consists of glycerides of fatty acids and a normal level of phospholipins and sterols. The phospholipin molecule is a combination of protein and fat, and the phospholipin family includes lecithin, cephalin, and sphingomyelin. Phospholipins and sterols form a membrane or sheath which surrounds the fat particles in milk and which permits the fat to remain in an emulsion. When milk is churned, the fat particles are broken up so that the fat from the larger globules goes into the butter, while the

surrounding material and the extremely small fat globules remain in the buttermilk. Consequently, the proportion of phospholipins and sterols in buttermilk is much greater than that in milk, whereas that in butter is less.

Dr. Levowitz described in detail his method of analyzing the merchandise herein. Briefly, this involved an extraction of the fatty material by the Roese-Gottlieb method, a determination of the total phospholipin content of the fatty extract, and the subtraction of the same with certain corrections, so that a phospholipin and sterol content equal to that in normal milk or normal butter was included. The corrections were made for both butter and milk since there has been a debate as to whether the term "butterfat" means the fat of butter or the fat of milk. Dr. Levowitz explained:

> Now, in normal butterfat, meaning the fatty extract of either normal whole milk or of normal butter, depending on which way you care to define butterfat, you have definite levels or definite ranges of both phospholipin and sterol. To subtract all of the phospholipin from the total fatty extract of buttermilk powder would give us an improper butterfat value, in that we would then remove all of the phospholipin, while we know that some must be present.

> Therefore, what I did is, I calculated from the standard values of phospholipin and sterol in milk fat and the standard values of phospholipin and sterol in butterfat, referring to those two entities as the fatty materials of either normal whole milk or butter, I took those figures and subtracted those from the phospholipin and sterol or from the phospholipins which we determined and the sterols which we estimated in the total fatty extracts of the buttermilk powders that then should give us a value which should comply fully with the theoretical composition of normal butterfat.

The results obtained are set forth in plaintiff's exhibit 2 and indicate that the percentage of fat in the samples analyzed was in all cases less than 6 per centum.

In support of his statement that it is necessary to take into consideration the excessive phospholipins, in determining the butterfat content of dried buttermilk, Dr. Levowitz referred in the instant case and in the incorporated case to a number of texts and articles, many of which have appeared in the Journal of Dairy Science. Excerpts from some of these are quoted in plaintiff's brief in the incorporated case. For instance, in an article entitled "The Phospholipids in Milk" by Philip A. Wright, Edgar F. Deysher, and George E. Holm, in Journal of Dairy Science, volume XVI, page 466, it is stated:

> The phospholipid content of eight sweet cream commercial buttermilks was found to be approximately 0.27 per cent. No appreciable quantities of phospholipids are recovered in the fat when the Babcock, Modified Babcock or Minnesota-Babcock methods are used, but when the extraction method (Roese-Gottlieb) is used corrections for the presence of these compounds to the extent of from 6 to 17 per cent of the values obtained, depending upon the fat content of the sample, must be made.

Dr. Levowitz testified that his laboratories are asked by milk-processing companies and ice-cream plants to determine the fat and solids in dairy products, and this is done by the Roese-Gottlieb technique. Occasionally, he is asked to determine milk fat or butterfat, which involves a fairly complicated analysis. Work in this direction has increased in the past few years since vegetable ice creams have become legally acceptable in certain states. In such cases, he is asked to determine if the fatty extract of the sample is butterfat or if it contains other fat as well.

Dr. Levowitz testified that dried buttermilk is particularly valuable to the ice-cream industry because the phospholipins therein make it practical to whip mixes containing butter or butter oil, which are hard to handle with other milk products, unless egg yolk, which is more expensive, is added. Buttermilk products are also used in chocolate coatings, because the phospholipin increases the fluidity of cocoa butter, making a chocolate liquor which will coat thinly.

In the course of his testimony, Dr. Levowitz quoted the following definitions of butterfat.

The fat from milk is generally known as it appears in butter. For this reason it is commonly called butterfat. (Mojonnier & Troy, "The Technical Control of Dairy Products," p. 17.)

Milk fat or butterfat: Milk fat or butterfat is the fat of milk. (Journal of Milk Technology, March–April, 1950.)

Butterfat. The natural fat of milk; the chief constituent of butter, consisting essentially of a mixture of 9 or more glycerides, chiefly butyrin, olein, and palmitin, and having a specific gravity of not less than 0.905. (Webster's New International Dictionary, Second Edition, Unabridged, 1943.)

Dr. Levowitz stated that the fatty extract of dried buttermilk obtained by the Roese-Gottlieb method does not meet these definitions, because it is not the natural fat of milk considering the natural proportions of the various constituents. He admitted, however, that it is "a natural fat of milk, that is, all of its ingredients were derived from the original milk, but the proportion is hardly a natural one," since the phospholipin concentration is sixfold to tenfold its concentration in other dairy products. He stated that phospholipin differs from fat chemically; it contains phosphorus and nitrogen, whereas fats do not; its molecular weight is different; and its properties are different. However, the fat in dairy products does have a trace of both phosphorus and nitrogen.

The Government contends that the fatty extract obtained from dried buttermilk by the Roese-Gottlieb method is butterfat and that, in commerce and industry, the terms "fat," "milk fat," and "butterfat" are used synonymously in connection with dairy products. In support of its position, the Government called Ernest C. Thompson and offered in evidence a number of documents.

Mr. Thompson is a chemist and was employed by the Borden Co. from 1910 until his retirement in 1950, serving successively as assistant chemist, director of control laboratories, director in charge of all laboratories, and chief chemist and director of quality control. His duties included the development of the correct methods of analysis for the various food products manufactured by the company, the development of specifications based on such methods, and the establishment of standards for the purchase and sale of such products. He has also served on research committees and as chairman of the Standards Committee of the American Dry Milk Institute. Since retirement, he has been a consultant to the Borden Co. and to the American Dry Milk Institute. He has written several papers on the subject of quality control in the dairy industry and has been called upon from time to time to address industry groups in the fields of sales and production and science seminars of the agricultural colleges. He has been consulted by Army and Navy personnel, and the Federal Specifications Board, in regard to specifications and standards for dry milk products.

Mr. Thompson explained that the American Dry Milk Institute has a membership of about 200 manufacturing companies, comprising 85 percent of the firms engaged in the dry milk industry. Products bought and sold by them conform to standards set up by the institute. In 1952, the institute published a tentative standard for dry buttermilk solids, including standard methods of analysis, a copy of which was offered in evidence as defendant's exhibit D. Mr. Thompson stated that this document had been in the process of preparation for 10 years and that a similar publication had been privately circulated about 4 years prior to 1952. Work on the standard commenced in 1941 or 1942, when dried buttermilk began to be important commercially for other than dairy feeding purposes. According to the standard, the butterfat content of both extra grade and standard grade dry buttermilk solids shall be not less than 4½ per centum, to be determined by the modified Roese-Gottlieb method, as described in American Dry Milk Institute Bulletin No. 911, revised 1951. Mr. Thompson said that this method is similar to the prescribed customs laboratory method and the method of analysis of the Association of Official Agricultural Chemists for the determination of fat in dairy products. He stated that during the course of preparation of defendant's exhibit D no consideration was given to the presence of the phospholipins and sterols in butterfat because industry has always regarded them as a part of butterfat.

Mr. Thompson testified that he was familiar with the definitions and standards for food, issued by the Federal Security Agency, by reason of his work with the Borden Co., in the course of which he

took part in hearings before the Agency. He explained that the standards and methods of analyses set up must be complied with when bids are submitted for Government purchases. There were then received in evidence federal specifications for "Buttermilk" (defendant's exhibit F); "Milk, Dry, Powdered; Whole or Skimmed" (defendant's exhibit G); "Milk; Dry, Malted" (defendant's exhibit J); "Milk, Condensed" (defendant's exhibit K); and "Milk, Evaporated" (defendant's exhibit L).

The specification for buttermilk (defendant's exhibit F) is dated August 23, 1932, and provides that the finished product shall contain not less than 8.5 percent of milk solids, not fats, and that chemical analyses, where required, shall be made in accordance with the methods of the Association of Official Agricultural Chemists. Mr. Thompson stated that the method referred to is the Roese-Gottlieb method.

The specification for dry milk, powdered (defendant's exhibit G), and that for dry malted milk (defendant's exhibit J) set out the required amount of butterfat in each product and state that chemical analyses shall be according to the methods of the Association of Official Agricultural Chemists. The specification for condensed milk (defendant's exhibit K) and that for evaporated milk (defendant's exhibit L) refer to milk fat and state that analyses shall be according to the methods of the Association of Official Agricultural Chemists.

There was also received in evidence bulletin 904 of the American Dry Milk Institute, wherein it is stated that "dry milk solids" is the product resulting from the removal of fat and water from milk and that it contains not more than 1½ percent butterfat (defendant's exhibit H). Although this document does not refer to buttermilk or dried buttermilk, it was offered in evidence to show that the terms "butterfat" and "fat" are used synonymously.

In addition, Mr. Thompson testified that the terms "fat," "butterfat," and "milk fat" are used interchangeably in the milk industry, when referring to wet or dry milk products. He said that in his 40 years of experience he has never known or heard of any commercial use of the method described by Dr. Levowitz for the determination of the butterfat content of dried buttermilk powder. On the contrary, it has been customary to use the Roese-Gottlieb method for the determination of fat in dry milk products.

There was also received in evidence a publication of the Association of American Feed Control Officials, Inc., issued in 1952 (defendant's exhibit M). Mr. Thompson testified that he is familiar with the work of the association, having attended its meetings on behalf of the Borden Co., and that its purpose is to develop uniform standards and methods of analysis for feeds which will be accepted by feed control officials of the majority of the states. The document gives a definition of dried buttermilk, adopted in 1932, stating that it shall

contain "not less than 5 per cent of butterfat as determined by the Roese-Gottlieb method." Mr. Thompson added that the standard was in use at and prior to 1932 for determining the butterfat content of dried buttermilk in connection with feed.

Mr. Thompson testified that phospholipins and sterols are not fats but are soluble in Roese-Gottlieb solvents; therefore, that test does not disclose their percentage in a dairy product, nor would it show nondairy fat or adulterants. He referred to the Babcock method, which has also been used by the trade for testing the butterfat content of fluid milk and cream and skimmed milk. He said it could be used to find the butterfat content of buttermilk, but it would not give an accurate result, because it is only an approximate method of determination which excludes phospholipins and sterols. In his opinion, the test could not be used with dried buttermilk, even if reconstituted back to its liquid state, because of the hardening of the casein in the drying process. However, he admitted that there are accepted modifications of the Babcock method, by which the fat content of dried buttermilk can be determined. He stated that the Babcock method came into use around 1898 and was applied to the determination of fat in liquid buttermilk up until the Roese-Gottlieb method was developed for the determination of fat in evaporated milk. He said the Roese-Gottlieb method was accepted for use with one milk product in 1910 and that it has been applied to other products continuously since that time.

The evidence outlined above establishes the following facts, pertinent to the issue: Milk contains a substance, composed of the glycerides of fatty acids, together with phospholipins and sterols, which form a membrane around the fat globules. When milk (or cream) is churned, the fatty substance is broken down so that the resultant products, butter and buttermilk, have different proportions of the ingredients. Most of the true fat goes into the butter, whereas a larger percentage of the phospholipins and sterols goes into the buttermilk. The fatty ingredients in both butter and buttermilk, including the phospholipins and sterols, come from the natural fat of milk. When the Roese-Gottlieb method is applied to milk or milk products, the fatty extract obtained comprises not only the true fats but the phospholipins and sterols. Since buttermilk contains a larger proportion of phospholipins and sterols than other dairy products, their inclusion makes a marked difference in the result. There is a distinction between true fats and phospholipins and sterols, but the latter are included in the "butterfat" of milk or butter.

The claim here is that the larger proportion of phospholipins and sterols which is found in dried buttermilk should not be considered a part of the "butterfat" thereof. The question comes down to the meaning of the term "butterfat," as applied to dried buttermilk.

Since tariff acts are drawn in the terms of commerce, not of science, and since there is no proof of commercial designation, the common meaning of the term is controlling.

The testimony and the definitions quoted, *supra*, indicate that "butterfat" is defined as either the fat of milk or the fat of butter. See also Encyclopaedia Britannica, volume 4, page 469, and Funk and Wagnalls New Standard Dictionary. The evidence shows further that the fat of milk and the fat of butter contain the same ingredients, but the proportions are different. Consequently, the proportion of the ingredients does not necessarily control whether a given substance is or is not "butterfat." For instance, in the incorporated case, the Government chemist, Mr. Grigsby, pointed out that the composition of butterfat may change with the feed given the cows and with the seasons; that it is not a pure chemical compound nor even all fat, since it contains sterols and phospholipins in varying proportions.

In the instant case, Dr. Levowitz has admitted that the fatty extract of dried buttermilk, as obtained by the Roese-Gottlieb method, which includes the phospholipins and sterols, is the natural fat of milk in that all the ingredients are derived from milk, but the proportion is different. In his view, the butterfat of buttermilk includes only the proportion of phospholipins and sterols which is found in milk, excluding the balance. This results in a theoretical butterfat content. If phospholipins and sterols are included in butterfat when they are in milk, even though the proportion is small, the same ingredients are still a part of butterfat when the milk is changed into butter and buttermilk.

This conclusion is supported by trade practices. While Dr. Levowitz has cited a number of publications by research chemists, indicating that the excessive phospholipins and sterols in buttermilk affect the determination of the butterfat content thereof, his statements in regard to analyses he made commercially do not show that the trade was concerned with the point. In most instances, he was asked to determine the fat and solids in dairy products, which was done by the Roese-Gottlieb process. Where he was called upon to find butterfat, it apparently was in cases where it was suspected that the sample might contain some other fat, such as vegetable fat.

Mr. Thompson stated that in the trade the terms "fat," "butterfat," and "milk fat" are used synonymously; that phospholipins and sterols are regarded as a part of butterfat; and that it is customary to determine fat or butterfat content by the Roese-Gottlieb method. The standards, issued by the American Dry Milk Institute and the Association of American Feed Control Officials, and the federal specifications for milk and milk products support these statements.

They show that the trade considered analyses of milk products, including dried buttermilk, by the Roese-Gottlieb method to be a sufficient determination of butterfat content. The American Dry Milk Institute represents 85 percent of the firms engaged in the dry milk industry, and preparation of its standard was begun when dried buttermilk became an important commercial product for other than cattle feeding purposes. The definition adopted by the Association of American Feed Control Officials in 1932 is a standard for use by the feed industry. The federal specifications set forth the requirements to be met in connection with Government purchases of milk products. Taken together, the testimony and the documentary evidence are persuasive that the term "butterfat" is commercially understood to mean the fatty substances, including phospholipins and sterols, found in milk or in products derived from milk and that the butterfat content of an unadulterated dairy product is determined in the trade by the Roese-Gottlieb process.

We conclude that while technically and scientifically there may be a difference between "butterfat" and the fatty extract of buttermilk obtained by the Roese-Gottlieb method, this distinction is not made by the trade. Since tariff acts are drawn, not in the terms of science, but in the language of commerce, which is presumptively that in common use, classification cannot be based upon scientific terminology not in accord with trade usage. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436; *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117. We find that the term "butterfat," as used in tariff statutes, means the fatty substances, including phospholipins and sterols, in milk or in products derived from milk and that the butterfat content of dried buttermilk may properly be determined by the Roese-Gottlieb method of analysis. While a contrary result was reached in *Central Vermont Railway, Inc.* v. *United States, supra,* that decision was based upon the findings of research chemists, whereas the evidence herein establishes commercial meaning, which is presumptively the same as common meaning. *Rice Millers' Association, American Manufacturers* v. *United States and Oberle (Inc.),* 15 Ct. Cust. Appls. 355, T. D. 42560; *United States* v. *E. Dillingham, Inc.,* 41 C. C. P. A. (Customs) 221, C. A. D. 555.

Since the merchandise involved herein has been shown to contain more than 6 per centum of butterfat, when analyzed by the Roese-Gottlieb method, it is properly dutiable at $3\frac{1}{10}$ cents per pound under paragraph 708 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, under the provision for dried whole milk.

The protest is overruled and judgment will be rendered for the defendant.