(C.D. 2351)

RUDOLPH FAEHNDRICH ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 3, 1962)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., dissenting

JOHNSON, Judge: The merchandise involved herein is described on the invoices as butter oil or animal fat. It was assessed with duty at

1

7 cents per pound under paragraph 709 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as a butter substitute. It is claimed that the merchandise is not a butter substitute and is properly dutiable at 10 per centum ad valorem under paragraph 52 of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739. No contention has been made by either party that it is butter.

At the trial, a representative sample of the merchandise was received in evidence as plaintiffs' illustrative exhibit 1. The invoices, entries, customs laboratory reports, and other papers transmitted by the collector were also accepted as evidence. The sample consists of a deep yellow oily substance resembling butter but of a harder consistency than ordinary butter. Customs laboratory reports state:

The sample, a yellow fat, has the physical and chemical characteristics of butterfat.

Counsel for the respective parties entered into the following stipulation at the trial:

1. The sample, Exhibit 1, is butter oil or butterfat containing 99.9 per cent butter oil or butterfat and 0.1 per cent of moisture.

2. Butter contains a minimum of 80 per cent of butter oil or butterfat, the balance being primarily moisture, and in the case of salt butter, about one and a half per cent salt.

3. Merchandise such as Exhibit 1 is usually made by centrifuging melted butter. It may also be made by centrifuging milk or cream.

4. Such merchandise is chiefly used as a source of butterfat in the production of ice cream, and by such merchandise we mean merchandise such as Exhibit 1.

5. It is also used in certain segments of the baking and candy manufacturing industries as a source of butterfat.

6. In the production of ice cream the butterfat content may be furnished by using butter oil or sweet cream or frozen cream or plastic cream or melted unsalted butter, the selection depending upon availability and price.

7. In those segments of the baking and candy manufacturing industry where butter oil is used as a source of butterfat butter is also so used.

8. The foregoing facts were also true at the time of importation of the merchandise involved herein.

It was also stipulated that the terms "butterfat" and "butter oil" were used synonymously in the stipulation.

Murray C. Reiss, president of Paul R. Dillon Co., was called as a witness for the plaintiffs. He testified that his firm is engaged in the wholesale butter business and that he had been in that line since 1924. He has bought and sold butter throughout the United States and has also been in the retail business in the metropolitan New York area. On the basis of his business experience, he stated that butter is used primarily as a spread on bread.

The witness testified that he was familiar with a product known as butter oil, such as plaintiffs' illustrative exhibit 1, and that, to the best of his knowledge, it never has been used as a spread.

Defendant offered in evidence a photocopy of Letters Patent No. 2,414,837, dated January 28, 1947, covering an invention by Lloyd K. Riggs. (Defendant's exhibit A.) This invention relates to the manufacture of pure milk fat and butter from dairy cream. The method is described in the application as follows: Cream is heated to a temperature well above the melting point of milk fat. Then, by means of a high-speed centrifuge, there is produced a de-emulsified material containing a percentage of milk fat, as high as 80 per centum or 90 per centum. This material, while still in a heated condition, is centrifuged to produce an oil which contains about 99 per centum or more of milk fat. In the course of these processes, sludge, containing most of the casein or other proteins, is separated out, and the amount of free acids and other undesired substances is reduced. Most of the water and other volatile material is removed. To make butter, the milk fat produced is combined with about 20 per centum of cultured milk containing the desired acid and flavor factors and is stirred and cooled, whereby there is formed a body of plastic material. When this material has been cooled sufficiently and preferably hardened by super-cooling, it is ready for shipment. It has all the physical and chemical properties of the best butter.

The application states further:

At the present time, there is an unsatisfied demand for pure milk fat, particularly for shipment overseas. For shipping and storage purposes, pure milk fat has some advantages over milk products containing less than 100% of milk oil, for example butter, for the reason that butter contains only 80% of milk fat and also is more susceptible to spoilage than is pure sterilized milk fat. However, up to the present time, the demand for pure milk fat could only be satisfied by producing it from butter. This involves not only the entire expense of making butter as such, but the additional expense of the further treatment in melting the butter and recovering and purifying its fat content.

The inventor then refers to his process as an improved process of making milk fat, so as to produce a liquid containing about 99 per centum of milk fat.

It appears from the record herein that this merchandise consists of 99.9 per centum butter oil or butterfat and 0.1 per centum moisture and that such merchandise is usually made by centrifuging melted butter or milk or cream. One such process has been described in defendant's exhibit A. Under this process, cream is so treated that an oil containing about 99 per centum milk fat is produced. In the course of the process, undesired substances are removed. From this product, butter is made. Butterfat may also be obtained by centrifuging melted butter.

Butter has been defined under the Federal Food, Drug, and Cosmetic Act as "the food product usually known as butter, and which is made exclusively from milk or cream, or both, with or without common salt, and with or without additional coloring matter, and containing not less than 80 per centum by weight of milk fat, all tolerances having been allowed for." (21 U.S.C., section 321a.) It consists mainly of the fatty glycerides derived from milk, usually spoken of as butterfat or milk fat, together with water, proteins, lactose, milk sugar, and ash. It should have a firm, waxy body and a pleasant creamy flavor. (Thorpe's Dictionary of Applied Chemistry, volume II, page 160; Encyclopaedia Britannica, volume 4, page 469.)

The term "butterfat," as used in tariff statutes, means the fatty substances in milk or in products derived from milk. *C. J. Tower & Sons* v. *United States*, 33 Cust. Ct. 181, C.D. 1651. Butterfat is the chief constituent of butter. It does not become rancid as readily as butter, because the albuminous curd and the water present in the latter favor the growth of the organisms which promote rancidity. (Encyclopaedia Britannica, volume 4, page 469.)

Kirk & Othmer's Encyclopedia of Chemical Technology, volume IV, page 806, describes the Riggs' process for producing milk fat and points out:

> While butter is the chief form in which milk fat is concentrated, there has been some interest in substantially pure milk fat. The patents of North (15) and Riggs (20) deal with the production of milk fat. Some commercial-production milk fat has been made by these processes. * * * Milk fat of this type is used by the food industries in the manufacture of other food products.

The general rule is that an *eo nomine* statutory designation of an article, without limitation or shown contrary legislative intent, judicial decision, or administrative practice, includes all forms of such article, as long as the article has not been so processed as to lose its identity and become a new article. *Nootka Packing Co. et al.* v. *United States*, 22 C.C.P.A. (Customs) 464, T.D. 47464; *Crosse & Blackwell Co.* v. *United States*, 36 C.C.P.A. (Customs) 33, C.A.D. 393; *T. M. Duche & Sons, Inc., et al.* v. *United States*, 44 C.C.P.A. (Customs) 60, C.A.D. 638. Whether or not an article which, at one stage of its production, is appropriately classified under a particular designation, has been so altered by subsequent operations that that designation is no longer appropriate, is a question of fact to be determined on the basis of the circumstances of the case. *John J. Coates Co. et al.* v. *United States*, 44 C.C.P.A. (Customs) 97, 101, C.A.D. 643. A change in use is an important factor in making this determination.

In the instant case, it appears that butter, which contains about 80 per centum butterfat, may be processed in such a way as to produce a product containing 99.9 per centum butterfat, or cream may be so processed as to produce such a product. Butter and butterfat (which

is also known as butter oil and milk fat) have distinct names. The latter is the chief ingredient of the former, but it is also an ingredient of milk, cream, and other milk products. Butter is used primarily as a spread on bread and is also used in cooking and baking. According to the present record, the instant merchandise, which is almost pure butterfat, is never used as a spread on bread. There is no evidence that it is used in cooking or in household baking or candy making. It is used chiefly in the production of ice cream and in the baking and candy manufacturing industries. Such merchandise is not commonly or commercially regarded as butter, but is a distinct commodity having a different name or names and much more limited uses than butter.

The next question is whether this merchandise is a butter substitute. It was so classified by the collector, and it is presumed that he found the facts necessary to sustain his classification. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C.C.P.A. (Customs) 146, C.A.D. 75; *United States* v. *Zoltan Erdosi*, 40 C.C.P.A. (Customs) 137, C.A.D. 509.

Plaintiffs claim that the merchandise is not a substitute for butter on the grounds that it does not replace butter for the purpose for which butter is chiefly used, as a spread; that it does not have the primary or essential characteristics of butter; that the use of butter oil in place of butter in the production of ice cream and in the baking and candy-making industries is a matter of choice; and that butter oil does not take the place of butter in substantially all respects and under substantially all conditions.

An article may be a substitute for another, where it takes the place of the other and has similar characteristics and uses. *Tai Lung Co.* v. *United States*, 18 C.C.P.A. (Customs) 35, T.D. 44004. However, the mere fact, standing alone, that a substance is used in lieu of another does not, of itself, establish that it is in fact a substitute for the latter. The phrases "in lieu of" and "substitute for" are not always synonymous in a tariff sense. *Dorward & Sons Co. et al.* v. *United States*, 40 C.C.P.A. (Customs) 159, C.A.D. 512. A substitute must possess, in some degree, at least, the quality for which the original article would be selected. A device which does not possess such quality cannot be held to be a substitute, even though it may perform some of the functions of the article. *Bulova Watch Co.* v. *United States*, 21 C.C.P.A. (Customs) 156, T.D. 46494. In *Advance Solvents & Chemical Corp.* v. *United States*, 34 C.C.P.A. (Customs) 148, 154, C.A.D. 358, the court stated:

It will not do to lay down the rule that a substance which might be used in some respects only for another substance should be held, in a tariff sense, to be a substitute for the last-named substance.

The word "substitute" surely means that some thing or body takes the place of some other thing or body in substantially all respects and under substantially sall [*sic*] conditions.

The butter oil involved in this case is used in the production of ice cream and in the baking and candy-making industries. Butter is also so utilized, but it has many additional uses which butter oil does not have. For instance, butter oil is not used as a spread on bread. In fact, from the description of the merchandise and from an examination of the sample, it is clear that it could not be served at the table for use with bread or rolls as butter is ordinarily and primarily used. There is no evidence that it is used in cooking, either in the household or in hotels or restaurants. There is no evidence that it is used in home baking or candy making. According to the stipulated facts, it is used in the ice cream, baking, and candy manufacturing industries as a source of butterfat. It may also be utilized by these industries because it does not become rancid as quickly as butter. On the other hand, butter is selected for use as a spread and in cooking, not only as a source of butterfat but because it adds flavor and tastiness to other foods. While the instant merchandise has some of the characteristics of butter and is used as a source of butterfat in the commercial production of ice cream, candy, and baked goods, it cannot take the place of butter in substantially all respects and in substantially all conditions. It has some characteristics which butter does not have and butter has some characteristics which it does not have. By way of contrast, note that oleomargarine, the well-known butter substitute, is used in all the ways in which butter is used.

We hold, therefore, that this merchandise is not a butter substitute within the meaning of paragraph 709 of the Tariff Act of 1930, as modified. It is properly dutiable at 10 per centum ad valorem under paragraph 52 of said tariff act, as modified, as an animal oil or animal fat, not specially provided for.

The protests are sustained, and judgment will be rendered for the plaintiffs.

DISSENTING OPINION

DONLON, Judge: In my opinion, the collector did not err in assessing duty on butterfat at the rate provided for butter.

It is stating the obvious to observe that it is the duty of the court to ascertain the intention of Congress. It is equally obvious that we may not infer that Congress made no specific provision for an article, thus throwing it into a not-specially-provided-for classification, when there is evidence that Congress did make specific provision for the article.

This article is called butterfat. On the record before us, it is an article processed from milk without the addition of any other ingredient. Butterfat is the natural fat of milk. Cream is that part of milk richest in butterfat. Butter is butterfat that has been solidified by mechanical agitation. Whether the butterfat of this litigation was processed directly from cream, or from cream that had been solidified into butter and later melted back into the fluid state, this merchandise is a milk product, rich in butterfat and processed by centrifuging. Centrifuging agitates the thing that is centrifuged.

There has been no change in either the basic butter or cream, other than in form, a change that was effected solely by mechanical processing. That such change of form does not result in change of tariff classification, unless Congress has otherwise provided, is well established. Mere change in form does not remove the article from *eo nomine* provision into a not-specially-provided-for classification. *T. M. Duche & Sons, Inc., et al.* v. *United States*, 44 C.C.P.A. (Customs) 60, C.A.D. 638; *Crosse & Blackwell Co.* v. *United States*, 36 C.C.P.A. (Customs) 33, C.A.D. 393; *Nootka Packing Co.* v. *United States*, 22 C.C.P.A. (Customs) 464.

When the Tariff Act of 1930 was pending in Congress, the dairy provisions were the subject of considerable discussion. As enacted, there are two statutory provisions pertinent to this litigation.

PAR. 707. Whole milk, fresh or sour, * * *; cream, fresh or sour, * * *; skimmed milk, fresh or sour, and buttermilk, * * *: *Provided*, That fresh or sour milk containing more than 5½ per centum of butterfat shall be dutiable as cream, and fresh or sour cream containing more than 45 per centum of butterfat shall be dutiable as butter, and skimmed milk containing more than 1 per centum of butterfat shall be dutiable as whole milk.

PAR. 709. Butter, * * *; oleomargarine and other butter substitutes, * * *.

The original butter rate, fixed in the act, has been modified. There has, however, been no change in the statutory provision requiring that "cream containing more than 45 per centum of butterfat shall be dutiable as butter."

Repeatedly, in the hearings and reports on the bill, it was said, without contradiction, that all dairy products were provided for and that the tariff rates on the various products of milk and cream should be harmonized on the basis of butterfat content. The bill, as enacted, did harmonize the rates on that basis.

The report of the Committee on Ways and Means to the House (report on the Tariff Readjustment—1929, House Report No. 7—71st Congress, 1st session), contains this statement:

Paragraphs 707–710 relate to dairy products, the production of which is a growing and widespread industry, found everywhere, and a steady source of

revenue to the farmer. The basic duty is that on butter, which has been exhaustively investigated by the Tariff Commission, and on which the President fixed the duty at 12 cents per pound. This was an increase from 8 cents per pound, as provided in the tariff act of 1922. Our examination confirmed the conclusion of the President. Duties on fresh or sour whole milk, cheese, and cream, as well as those on preparations of milk, are the compensating duties based on the duty on butter. Butter substitutes are given the same duty as butter. The rate on skimmed milk and buttermilk is equalized with the ad valorem duty on butter. [P. 285.]

In the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means, there is an analysis of the domestic farm cost of butterfat, and the like cost in Denmark, per pound of butterfat, then converted into the butterfat cost per pound of butter. (Pp. 1063, 4.) Thus, the butterfat cost was the factor considered in determining tariff rates on all dairy products.

My colleagues conclude that this merchandise is neither butter nor a substitute for butter and, hence, that it is not dutiable as butter. Whether or not it is butter which has been melted and centrifuged and, hence, still is butter, is perhaps beside the point. Butter is cream, rich in butterfat, which has been churned. When further processed mechanically into a softer form than butter usually has, it is still a form of cream, rich in butterfat. Congress has said that such cream is dutiable as butter and that is how the collector assessed duty.

This article is an animal fat, but it is not an animal fat which is not specially provided for. It is a product of milk. Specific provision was made for all milk products, harmonized to the butter rate. The butterfat content of this article is so high that duty is chargeable at the butter rate.

The protests should be overruled and judgment entered for defendant.