BEFORE THE SECOND DIVISION, FEBRUARY 17, 1955

**No. 58777.**—Albert F. Maurer Co. *v.* United States, protest 194186–K (Philadelphia).

LAWRENCE, Judge: The importation in controversy is described on the consular invoice as "Bent Steel Wire Pieces." The collector of customs classified the articles as "wrenches" pursuant to the terms of paragraph 396 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 396) and imposed duty at the rate of 45 per centum ad valorem.

Plaintiff claims that the articles are not wrenches and that they are properly dutiable as articles or wares, not specially provided for, composed wholly or in chief value of metal, as provided in paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), and dutiable at 22½ per centum ad valorem.

The pertinent text of the competing provisions of law is here set forth—

Paragraph 396 of the Tariff Act of 1930:

PAR. 396. Drills (including breast drills), bits, gimlets, gimlet-bits, countersinks, planes, chisels, gouges, and other cutting tools; pipe tools, wrenches, spanners, screw drivers, bit braces, vises, and hammers; calipers, rules, and micrometers; all the foregoing, if hand tools not provided for in paragraph 352, and parts thereof, wholly or in chief value of metal, not specially provided for, 45 per centum ad valorem.

Paragraph 397 of said act, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

  *   *   *   *   *   *   *

  Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

  *   *   *   *   *   *   *

    Other (except slide fasteners and parts thereof)_____ 22½% ad val.

At the trial, no oral testimony was introduced, but adversary counsel agreed upon the following facts:

(1) Collective exhibit 1 represents the various sizes of the four items of merchandise on the invoice described as "Bent Steel Wire Pieces."

(2) Collective exhibit 2 consists of three screws or bolts representing the type of merchandise with which collective exhibit 1 is used.

(3) The merchandise in controversy is composed wholly or in chief value of metal.

(4) It is used for turning bolts and screws, such as those represented by collective exhibit 2, "by inserting either end of the item in Collective Exhibit #1 into the hexagonal slots in the top of the items of Collective Exhibit #2 and then applying a rotational strain through Exhibit #1 to Exhibit #2," that being the only method by which said screws or bolts, represented by exhibit 2, can be turned, other than with finger pressure where the pressure required is not too strong.

(5) Collective exhibit 1 is known, among other things, as a screw key.

Plaintiff contends that the merchandise in controversy is not within the common meaning of the term "wrench" and invites our attention to the following dictionary definitions:

*The Century Dictionary and Cyclopedia*

*Wrench* N. (5). A tool consisting essentially of a bar of metal having jaws at one end adapted to catch upon the head of a bolt or a nut, or to hold a metal pipe or rod, so as to turn it.

*Websters New International Dictionary*

*Wrench* N–4. An instrument, often a single bar or lever with jaws or an angular orifice either at the end or between the ends, for exerting a twisting strain, as in turning bolts, nuts, screw tops, etc.; *a screw key*; a spanner. [Italics added.]

*New Standard Dictionary*

*Wrench* N. (2) A tool for twisting or turning bolts, nuts, pipe or the like, consisting of a lever with jaws, lugs, or a socket adapted or adjustable to fit a nut, bolt head, or other object to be turned.

*Knight's Mechanical Dictionary*

*Wrench.* A bar having jaws adapted to catch upon the head of a bolt or upon a nut to turn it, or to hold the latter from turning in some cases when the bolt is being rotated.

Plaintiff then points out that whereas the subject merchandise is sometimes known as a "screw key" it is not of the kind or type of article defined as "screw key" in Webster's New International Dictionary as follows:

*Screw-key.* A wrench or spanner for turning a screw or nut.

A spanner is defined by the same authority as follows:

*Spanner.* N. 3. A tool, having a jaw or socket at either end or both ends to fit a nut or the head of a bolt, a pipe or hose-coupling, or the like, and used as a lever to turn it with, esp. one having a tooth or one or more pins in its jaws, to fit a special ream in the bolt or nut; a wrench.

Based upon the foregoing definitions, it is urged by plaintiff that a wrench as such must have "some kind of jaw, socket arrangement or angular orifice to fit over or around the head of a nut or bolt," whereas the merchandise in controversy is designed to fit into a hole or orifice in the head of a bolt or screw but does not contain any kind of jaw, socket, or angular orifice.

We are not satisfied that the definitions above quoted are restricted in the sense indicated by plaintiff. It will be observed that the definition of the word "wrench" in Webster's New International Dictionary includes a "screw key," which latter is described in the same dictionary as "A wrench or spanner for turning a screw or nut." [Italics supplied.]

Defendant invites our attention to other definitions of "screw key" as follows: Standard Dictionary of the English Language under the title "key":

**s-key.** *n.* **2.** A socket-wrench or the like for turning a screw.

The Century Dictionary and Cyclopedia:

**Screw-key,** *n.* A key for turning a screw. It may be a form of screw-driver, or a form of wrench. * * *

In the reply brief of plaintiff, the following alternative definition of "screw-key" is quoted from the supplement section of the Century Dictionary and Cyclopedia:

*Screw-key,* N. 2. A socket-wrench in which the *socket is formed* on the end of the shank *to receive* the nut or head and the shank is turned by a crosspiece or T-head. [Italics quoted.]

Aided by the foregoing definitions, we are satisfied that the subject merchandise falls within the common meaning of the term "wrench."

Not without significance is the fact that plaintiff, in making its consumption entry, described the merchandise as "BENT STEEL WIRE PIECES *as Wrenches or Hand Tools.*" [Italics supplied.] Moreover, the report of the collector attached to the protest states in part as the basis of affirmation "See report of Appraiser of Merchandise on attached Customs Form 4371."

The protest is dated September 18, 1952, and appears to have been filed at the customhouse in Philadelphia the same day. The report of the collector is dated October 28, 1952, and the report of the appraiser is dated October 6, 1952. Since both documents were filed within the 90-day period within which the collector is authorized to review the protest, they become proper sources of information. See *M. Pressner & Co.* v. *United States,* 26 C. C. P. A. (Customs) 186, C. A. D. 16, and cases cited therein. The appraiser's report which is entitled "Memorandum to Accompany Invoice" recited in part "The merchandise, subject of Protest #85311 [194186–K], is commercially known, bought and sold as an Allen Wrench. Wrenches are provided eo nomine in par. 396 and which paragraph is more specific than the 'nspf' provision of par. 397."

It is noted also that the appraiser in his red-ink return on the consular invoice described the merchandise as "Allen wrenches."

The controversy appears to be without precedent, and we find no case authorities directly in point.

Upon the record before us, we are of the opinion that plaintiff has failed to overcome the presumed correctness of the collector's decision.

For the foregoing reasons, we overrule the protest and judgment will be entered accordingly.