(C.D. 2703)

ASTRA TRADING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 6, 1966)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* and *David Serko* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The importation involved in this protest, invoiced as "Flashlight Tool," consists of two basic components, a flashlight and a screwdriver set. The collector classified the flashlight component under paragraph 353, Tariff Act of 1930, as "flashlights" and, as such, assessed duty thereon at the rate of 35 per centum ad valorem. The screwdriver component, consisting of four screwdriver blades and a chuck affixed to a U-shaped bracket, was classified as an entirety under the provisions of paragraph 396, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and as supplemented by T.D. 52820, for screwdrivers and parts thereof, dutiable at 22½ per centum ad valorem.

Plaintiff contends the importation is an entirety, dedicated to one particular use as an "illuminated screwdriver," which is more than either of its component parts. Accordingly, in its protest as originally filed, plaintiff claimed that the importation should be classified as an entirety, either under paragraph 396, as modified, *supra*, as screwdrivers and parts thereof; or, alternatively, under paragraph 397, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as manufactures of metal, not specially provided for, dutiable at 20 per centum ad valorem. By amendment, made at the trial without objection, plaintiff added an additional claim for classification as an entirety under paragraph 353, as modified by T.D. 52739, as other articles, except flashlights, having as an essential feature an electrical element or device, dutiable at 13¾ per centum ad valorem.

The pertinent text of the competing statutes is as follows:

Classified under:

Paragraph 353 of the Tariff Act of 1930:

Articles having as an essential feature an electrical element or device * * *;

All the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

Paragraph 396 of the Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52820:

* * * screw drivers * * * and parts thereof, wholly or in chief value of metal, not specially provided for _____ 22½% ad val.

Claimed under:

Paragraph 396 of the Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52820:

\* \* \* screw drivers \* \* \* and parts thereof, wholly or in chief value of metal, not specially provided for _____ 22½% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*  \*  \*  \*  \*  \*  \*

 Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*  \*  \*  \*  \*  \*  \*

 Other \* \* \* _____ 20% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739:

Articles having as an essential feature an electrical element or device, such as \* \* \*:

\*  \*  \*  \*  \*  \*  \*

 Other (except the following \* \* \* flashlights \* \* \*) _____ 13¾% ad val.

The issues presented for determination are, simply stated, whether the subject merchandise is dutiable as an entirety; and, if so, the proper classification of such an entirety.

With respect to the threshold issue, the question of the separability of imported goods for duty purposes has been the subject of numerous judicial decisions. Reviewing many of the earlier pronouncements of the courts, the United States Court of Customs Appeals, in *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, 318, T.D. 41232, said:

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

In *Donalds, Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, the court was alert to the risk of possible oversimplification, and set forth what it believed to be the gist of the decided cases:

\* \* \* If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature

are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

The question presented in applying the doctrine of entireties to a particular article, cogently expressed in *F. B. Vandegrift & Co., Inc.* v. *United States*, 43 Cust. Ct. 22, 25, C.D. 2097, is whether the importation is a "single commercial entity made up of two or more elements or parts, or whether the importation actually consisted of several commercial entities which, although imported together, retained their individual identities and did not merge into that of a combined entity."

The decision of this court in *Miniature Fashions, Inc.* v. *United States*, 52 Cust. Ct. 26, C.D. 2429, while noting that no absolute solution to the problem of entireties is to be found in simply stating that an entirety exists if the identity of the components is submerged into that of a newly created entity, suggests a preliminary consideration which, if applicable to a given factual situation, enables a relatively facile determination of an entirety claim. The court distinguished those importations in which the components had no useful function until joined into a single entity from those in which the several components were alone susceptible to any extent of a separate use.

With this distinction in mind, the narrow question presented here is whether the separate component parts of the subject importation have any useful purpose separate and apart from the functions they serve when combined with each other. An examination of the record, together with an inspection of the article itself, does not permit an affirmative answer.

The only testimony, at the trial, was given by Mr. Robert N. Heit, assistant vice president of the plaintiff. Mr. Heit said that, during his employment by plaintiff over the past 20 years, he has been involved with administration, general sales policy, selling, and particularly, in the last few years, with buying binoculars, telescopes, microscopes, sundry gifts, batteries, and flashlights. It was stipulated that exhibit 1, introduced by plaintiff, was representative of the subject merchandise and was not plated with platinum, gold, or silver and not covered with gold lacquer and is not in chief value of platinum, gold, or silver. It was also stipulated that the screwdriver portion of the article was in chief value of iron or steel, and the flashlight portion had as an essential feature an electrical element or device and is in chief value of metal.

Examination of exhibit 1 discloses that it is composed of two basic parts, the larger of which appears to be a standard flashlight, about 6 inches long, except that it contains certain features not usually found on a standard flashlight. Encircling the head of the flashlight part

is a metal band, about ½ of an inch wide, which appears to be riveted, by means of four rivets, to the head, just behind the lens portion. There are two inserts in the ring, one on either side of the flashlight head. There is a narrow knurled band around the flashlight between the head and the flashlight switch. The lens is basically concavo-convex, and has in its center a biconvex segment, about ½ of an inch in diameter.

The other major component of the article, classified by the collector in its entirety as a screwdriver, consists of a U-shaped bracket forming two prongs with, at the base of the U, a chuck attachment. Also, there are four screwdriver blades which may be inserted interchangeably into the chuck.

The witness testified that the "entire item," i.e., exhibit 1, was designed specifically to be used as an illuminated screwdriver and could not serve that function without the flashlight, chuck attachment, or screwdriver blades.

The witness also testified that the lens of the flashlight component was completely different from the lenses of six other standard type flashlights showed to him. The six other lenses were flat pieces of glass while the lens of exhibit 1, which is much more expensive than the other lenses, had in its center—

* * * a specially constructed piece of glass which is made in such a way that the light will be pinpointed by the use of this central piece so that when you are using the screwdriver, you will have most of the light directed at the working point of the screwdriver.

On cross-examination the witness explained that the other flashlights showed to him had "normal type" lenses "which give a certain light spread out over an area" and are used for a "general area of light." Exhibit 1, on the other hand, "gives you a pinpoint light so it is not very practical to use as a flashlight."

The metal band around the head of the flashlight is, according to the witness, made of steel, and the two inserts located on the band permit the insertion of the two prongs on the U-shaped bracket and chuck attachment, which are also made of steel. The screwdriver blades can then be inserted into the chuck. The narrow knurled ring, not normally found on flashlights, is to enable the user to get a better grip when applying force in using the screwdriver.

On direct examination, while holding in his hand in the normal position for a screwdriver, the U-shaped bracket with chuck attachment which was not inserted into the flashlight component, the witness was asked whether he found it comfortable. He replied that he found it rather awkward and a little painful because the sharp edges dug into his skin. On cross-examination the witness repeated the same test with a screwdriver blade inserted into the chuck and was asked

whether the parts he held in his hand (the U-shaped bracket, chuck attachment, and screwdriver blade) could function as a screwdriver. He replied:

If I wanted to tighten a screw, I think I would be forced to stop because of the pressure. I don't think I would be able to get enough pressure on it. Look at my hand. It is all marked up without any pressure at all. * * *

The testimony of the witness, complemented by an examination of exhibit 1, clearly indicates that the various component parts of exhibit 1 have no useful purpose apart from the function each serves as a participating part of the subject importation.

The specially designed lens of the flashlight, which pinpoints the rays of light emanating from the flashlight bulb to the screwdriver blade, a distance of about 6 inches, so restricts the use of the flashlight component that it is not able to perform the acts, operations, or services characteristic of or usually expected from a flashlight. Furthermore, we believe that such a restricted use potential subordinates the identity of this component as a flashlight to its identity as the illuminating element of the combined article.

Similarly, the screwdriver components—blades, chuck, and U-shaped bracket—are alone not susceptible to use as a screwdriver without being joined to the flashlight component. For, when not inserted into the steel band riveted to the flashlight unit, the screwdriver components have no handle. The U-shaped bracket obviously was not designed to be grasped by the hand, nor can it be so used without physical discomfort to the user. In short, the screwdriver components do not form a complete screwdriver until and unless they are inserted into the steel band riveted to the flashlight unit which, in addition to providing illumination, also serves as the handle for the screwdriver.

Having determined that the subject importation is dutiable as an entirety, we are presented with the question of the classification of such an entirety. Plaintiff contends that the subject importation, considered as an entirety, is a combination article which is more than a screwdriver and more than a flashlight. As such, plaintiff argues, the article should be classified under paragraph 353 as an article containing as an essential feature an electrical element or device. In support of this argument, plaintiff refers to a stipulation of the parties to the effect that the flashlight portion of exhibit 1 has as an essential feature an electrical element or device.

Defendant contends, on the other hand, that if the court should find that the imported article is an entirety, then it is properly dutiable under the *eo nomine* provision for screwdrivers in paragraph 396, for it is basically and for utilitarian purposes a screwdriver, albeit an illuminated screwdriver.

The general rule, here applicable, is, of course, that an *eo nomine* statutory designation of an article, without limitation or contrary legislative intent, judicial decision, or administrative practice, includes all forms of such article. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464; *Rudolph Faehndrich et al.* v. *United States*, 49 Cust. Ct. 1, C.D. 2351. The term "more than," which plaintiff seeks to have applied here, is used in construing statutory language to distinguish between an imported article and an article that is *eo nomine* designated in the statute. *Fairchild Camera & Instrument Corp. et al.* v. *United States*, 53 Cust. Ct. 141, C.D. 2486. Accordingly, the narrow issue on this point is whether plaintiff has shown that the *eo nomine* provision for screwdrivers does not include the imported article by reason of its being something more than a screwdriver. We find that the record, viewed in the light of applicable case law, does not support such a determination.

The decision in *United States* v. *A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794, cited by plaintiff, is distinguishable. In that case, the imported article contained a motor which also embodied gears and a frame which served as a housing for other parts of the floor polisher. The additional features made the article more than a special type of a motor since it formed part of the assembly of the floor polisher. The rationale of the *A. W. Fenton* decision, *supra*, would be applicable herein if the record showed that the article had a use in addition to its use as a screwdriver. However, plaintiff's own witness, when questioned as to the purpose of the importation, stated, without qualification, that the article was "designed specifically to be used as an illuminated screwdriver," and "the purpose of this entire item is to be used as a screwdriver * * *."

Lexicographic authorities define a screwdriver as a tool or device used for turning or driving screws. Funk & Wagnalls New Standard Dictionary of the English Language, 1956; Webster's Seventh New Collegiate Dictionary. We do not believe that the additional feature of illumination transforms the basic purpose of the imported article from use as a screwdriver into some other use; nor do we believe that the illuminating feature gives the article a use in addition to its intended use as a screwdriver. For, illumination notwithstanding, the article remains essentially a device restricted to the use of turning screws, i.e., a screwdriver. Our decision also is influenced by the well-established principle that, in determining classification, an *eo nomine* designation must, unless a contrary legislative intent clearly is indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific. *United States* v. *Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627.

In reaching this conclusion, we find support in the frequently stated principle that Congress legislated for the future and is presumed to have intended to cover all forms of the article as they are developed. *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669; *J. E. Bernard & Co., Inc., et al.* v. *United States*, 52 Cust. Ct. 56, C.D. 2436.

In a recent decision of this court, *United-Carr Fastener Corporation* v. *United States*, 56 Cust. Ct. 347, C.D. 2648, importations of so-called "Tee Nuts," were involved. Plaintiff claimed the article, being more than a nut, was beyond the scope of the *eo nomine* provision for nuts in paragraph 330, Tariff Act of 1930, as modified, and should have been classified under paragraph 397, as modified, as manufactures of metal, not specially provided for.

Resorting to lexicographic authorities, the court found, as common to the definitions of the word "nut," the feature of holding something together and, accordingly, found the "Tee Nut" involved therein not to be more than a nut but merely one with improved and increased capabilities. In the case at bar, we have a screwdriver with the added convenience of a light if desired. This does not convert the imported article into something more than a screwdriver.

In the foregoing discussion we have assumed, as apparently did the parties, that the statutory provision for "screwdrivers" in paragraph 396 is an *eo nomine* designation. The decisions in *P. H. De Wilde and Harper, Robinson & Co.* v. *United States*, 35 Cust. Ct. 295, Abstract 59420 (vises), and *Albert F. Maurer Co.* v. *United States*, 34 Cust. Ct. 284, Abstract 58777 (wrenches), affirmed in *Same* v. *Same*, 43 CCPA 90, C.A.D. 613, would seem to support this assumption. On the other hand, we are aware of the fact that the lexicographic authorities, referred to above, make use the criterion for determining whether or not an article is a screwdriver. See, *Ritter Carlton Co.* v. *United States*, 8 Cust. Ct. 99, C.D. 584 (pliers). However, whether the provision for screwdrivers is considered as an *eo nomine* designation or as a use provision, and notwithstanding the stipulation that the flashlight component of the imported article has as an essential feature an electrical element or device, plaintiff may not succeed upon its claim for classification under paragraph 353. For it has been held that an *eo nomine* designation takes precedence over the classification of an article as one having as an essential feature an electrical element or device, *F. B. Vandegrift & Co., Inc.* v. *United States*, 41 Cust. Ct. 300, C.D. 2056, as does a classification by use, *United States* v. *R. W. Cramer & Co.*, 22 CCPA 45, T.D. 47049.

Applying this rationale to the case before us, we find that the record fails to show that the imported article, specifically designed and intended to be used as an illuminated screwdriver, notwithstanding the existence of the additional feature of illumination, serves any end

purpose other than that of a screwdriver. It is, in short, a device for turning screws, and should, therefore, be classified as a screwdriver under paragraph 396 of the Tariff Act of 1930, as modified.

Judgment will be entered accordingly.