(C.D. 4568)

DURST INDUSTRIES, INC. v. UNITED STATES

Court No. 67/36502

(Decided November 26, 1974)

*Allerton deC. Tompkins* for the plaintiff.

*Carla A. Hills*, Assistant Attorney General (*Robert B. Silverman*, trial attorney); for the defendant.

NEWMAN, Judge: The issue in this case concerns the correct dutiable status of certain water faucets imported from Japan in 1966 described on the commercial invoice as: "Al CP Brass Female Combination Faucet w/dish & post" (hereinafter "combination faucet"), and "A238 CP Brass 4″ Centerset w/pop up" (hereinafter "centerset faucet").

The merchandise was assessed with duty at the rate of 1.275 cents per pound plus 18 per centum ad valorem under item 680.20 of the Tariff Schedules of the United States (TSUS). Plaintiff contends that the imports are "more than" any of the articles provided for in item 680.20, TSUS, and are properly dutiable under item 654.00, TSUS, at the rate of 10 per centum ad valorem as either sanitary wares or parts thereof, or as articles not specially provided for of a type used for household use.

STATUTES INVOLVED

Tariff Schedules of the United States:

Schedule 6. – METALS AND METAL PRODUCTS

\* \* \* \* \* \* \*

Part 3. – METAL PRODUCTS

\* \* \* \* \* \* \*

Subpart F. – Miscellaneous Metal Products

\* \* \* \* \* \* \*

Articles not specially provided for of a type used for household, table, or kitchen use; toilet and sanitary wares; all the foregoing and parts thereof, of metal:

\* \* \* \* \* \* \*

Articles, wares, and parts, of base metal, not coated or plated with precious metal:

\* \* \* \* \* \* \*.

Of copper:

654.00      Of brass_____ 10% ad val.

\* \* \* \* \* \* \*

Part 4. – MACHINERY AND MECHANICAL EQUIPMENT

\* \* \* \* \* \* \*

Subpart J.—Parts of Machines

\* \* \* \* \* \* \*

Taps, cocks, valves, and similar devices, however operated, used to control the flow of liquids, gases, or solids, all the foregoing and parts thereof:

Hand-operated and check, and parts thereof:

680.20      Of copper_____ 1.275¢ per lb. + 18% ad val.

### THE RECORD

Plaintiff presented the testimony of two witnesses: Jules Rosenkranz, vice-president of the plaintiff corporation; and Melvin Morris, manufacturer's agent selling plumbing products. Additionally, plaintiff submitted representative samples of the combination and centerset faucets, as well as copies of two laboratory reports by the United States Customs Laboratory at New York showing the metallic content of the samples. The entry papers were received in evidence without marking.

Defendant presented the testimony of two witnesses: Robert W. Sullivan, executive vice-president of the Valve Manufacturers Association; and Theodore H. Johnson, product manager in charge of plumbing fittings for American Standards, Inc.

### FACTS

The combination faucet is the common kitchen sink type of fixture having inlets for hot and cold water, and a valve for each inlet designed to control the flow of water through a single spigot or spout. By opening or closing the valves, the volume of hot and cold water

running through the faucet can be controlled so that the temperature of the water flowing from the spout can be regulated. The term "combination" refers to the fact that both hot and cold water valves utilize a common spout in the faucet. Thus, hot and cold water may be so mixed as to regulate the temperature of the water flowing from the spout. Mr. Rosenkranz described this mixing features (R. 42–43):

Q. How is it that this article, Plaintiff's Exhibit 1, mixes the temperature of water?—A. Well, it allows—there's an opening on each end; one is connected to a hot water line and the other one is connected to a cold water line. When both valves are opened, water flows through the center portion of the body and flows out of the spout.

Q. All right.—A. And you are controlling the temperature, depending how much of the opening you have on each of the valves.

Q. So then just by manipulating the hot water valve, the spout would only have hot water coming out of it, and just by manipulating the cold water valve we would only have cold water?—A. Yes.

Q. Or any combination of the two.—A. That's correct.

Also, attached to the combination faucet by a post is a soap dish, which constitutes approximately ten percent of the cost of the article.

The centerset faucet is the common lavatory type of fixture and operates in the same manner as the combination faucet. However, in addition, the centerset faucet comprises a "pop-up" valve or drain which is designed to retain water in the basin when the drain is closed and to permit the flow of water from the basin into a drainage pipe when the drain is open. The pop-up valve is controlled by means of a handle, which moves up and down through a hole behind the spout of the centerset. Mr. Rosenkranz described the operation of the "pop-up" valve (R. 49–50):

Q. I believe you testified on direct examination that the function of the pop up valve controls the waste water.—A. Yes.

Q. Can you explain how that controls the waste water?—A. By lifting the knob in an upward position it seals the outlet portion of the basin from water flowing out. Conversely, compressing the knob would raise the valve portion of the fixture upward, allowing the water to flow out. It closes and shuts water flows, is what it really does. Opens and closes water flows.

Q. Are there only two positions, open and closed, or can it be adjusted to any combination?—A. It can be adjusted to any combination.

Q. And by adjusting the pop up valve you can determine or control the——A. The amount.

Q. Of water that flows out?—A. That is correct.

Q. And the speed with which the water would flow out?—A. Yes.

Defendant's witness Johnson also explained the operation of the pop-up valve (R. 120) :

Q. Now Plaintiff's Exhibit 2 additionally consists of a pop up valve.—A. Yes, that's correct.

Q. Would you please describe that?—A. The pop up valve is a device that is placed in the bottom, or the outlet portion of the lavatory, and attached to the ware, and by mechanical operation of a rod and a knob in the rear portion of the body of the fitting, the mechanical advantages are produced so that the plunger, the stopper is moved up and down to open and close this particular valve.

Q. And what is the function of the valve?—A. The valve—this valve is designed to really stop and control and start the flow of the waste water that's in the basin of the lavatory.

### CONTENTIONS OF THE PARTIES

In support of its "more than" theory, plaintiff contends that " 'taps', 'cocks' and 'valves' have only *one* moving part (spindle) to control the flow of liquids, gasses [sic] or solids, whereas the imported articles are combinations of other things, *containing* two or more valves which permit the articles to function primarily as hot and cold water mixing devices". Further, argues plaintiff, the imports "are not themselves bought, sold or commonly known as 'taps', 'cocks' or 'valves', and they are not similar to such things". Plaintiff claims that the merchandise is classifiable as sanitary wares or parts thereof, or alternatively, as articles not specially provided for of a type used for household use.

Defendant contends that the imported articles are within the common meaning of the *eo nomine* provisions for "taps" or "cocks". Alternatively, defendant claims that the imported articles are classifiable under item 680.20 as "similar devices * * * used to control the flow of liquids, gases, or solids".

### DECISION

It is, of course, a fundamental rule in judicial construction affecting tariff terms that an item which is "more than" a certain article cannot fall within the *eo nomine* provision for that article. *United States v. Flex Track Equipment, Ltd., Border Brokerage Co., Inc.*, 59 CCPA 97, C.A.D. 1046, 458 F. 2d 148 (1972) ; *Servo-Tek Products Co. v. United States*, 57 CCPA 13, C.A.D. 969, 416 F. 2d 1398 (1969). However, merchandise is classifiable on the basis of its primary design, construction and function, even though it is capable of performing other auxiliary or incidental operations. *Trans-Atlantic Company v.*

*United States,* 60 CCPA 100, C.A.D. 1088, 471 F. 2d 1397 (1973); *United Carr Fastener Corporation* v. *United States (Northern Screw Corp., Party in Interest),* 54 CCPA 89, C.A.D. 913 (1967); *J. E. Bernard & Co., Inc.* v. *United States,* 66 Cust. Ct. 362, C.D. 4215 (1971); *Fedtro, Inc.* v. *United States,* 65 Cust. Ct. 35, C.D. 4050 (1970); *Schick X-Ray Co., Inc.* v. *United States,* 64 Cust. Ct. 430, C.D. 4013 (1970); *Astra Trading Corp.* v. *United States,* 56 Cust. Ct. 555, C.D. 2703 (1966).

Respecting the "more than" doctrine, the majority of the appellate court observed in *E. Green & Son (New York), Inc.* v. *United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971):

> Only the most general of rules can be ascertained from the previous decisions dealing with the "more than" doctrine, and it appears that each case must in the final analysis be determined on its own facts. See *United Carr Fastener Corp.* v. *United States,* 54 CCPA 89, C.A.D. 913 (1967), and the cases cited therein. *In order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue.* It is well established that in determining the common meaning of a term or word used in a tariff provision, court decisions, dictionary definitions, and other lexicographical authorities may be considered. [Emphasis added.]

Hence, the common meaning of the *eo nomine* provisions for "taps", "cocks", and "valves" must be determined and compared with the merchandise.

While plaintiff's and defendant's witnesses were in disagreement concerning whether the articles in issue are within the common meaning of "taps", "cock", or "valves", the record establishes that the imports are commonly referred to in the plumbing trade as "faucets." The following definitions indicate that "taps" and "cocks" are commonly defined as "faucets"; and conversely, "faucets" are commonly defined as "taps" and "cocks". Thus:

*Webster's Third New International Dictionary* (1966), at 2339, 435, and 829:

> **tap** – 1 * * * b: a device consisting of a spout and valve that is attached to the end of a pipe to control the flow of a liquid or gas: FAUCET, COCK * * *.
> **cock** – * * * 2: a faucet, tap, valve, or similar device for starting, stopping, or regulating the flow of a liquid * * *.
> **faucet** – * * * 2: a fixture for drawing a liquid from a pipe, cask, or other vessel: TAP, COCK * * *.

*Chambers' Technical Dictionary* (1943), at 324:

> **faucet** (*Plumb.*). (1) A small tap or cock. * * *

*Dictionary of Mechanical Engineering* (1961), at 71 and 124:

**cock**
　See "faucet".
**faucet**
　A valve on a water pipe by means of which water can be drawn from or held within the pipe. The valve is placed on the end of the pipe.

*Audels Mechanical Dictionary* (1942), at 228:

**Faucet.** \* \* \*
　2. A cock or tap for water or other liquids.

Additionally, *Summaries of Trade and Tariff Information*, Schedule 6, Volume 10 (1969), at 81, explains the terms "tap" and "cock" appearing in the superior heading to item 680.20, TSUS:

> The term "tap" generally refers to a screwed plug type of valve such as that used in common household faucets. Cocks are simple valves in which the fluid passage is a hole in a rotatable plug fitted in the valve body. Rotation of the plug through a right angle stops the flow by opposing it to the undrilled diameter of the plug. Cocks are used to control the flow of material within a piping system rather than at the terminal of the system. \* \* \*

While, as indicated in the *Summaries*, the term "tap" may refer to a "screwed plug type of valve such as that used in common household faucets", the lexicographic authorities quoted *supra* clearly indicate that faucets *per se* (which include a *spout* as well as a valve) also are "taps" within the common meaning of the term.

Plainly from the lexicographic authorities cited above the combination faucets are within the common meaning of the terms "taps" and "cocks". I am clear that Congress did not intend to differentiate, for tariff classification purposes, between faucets comprised of a single valve and spout and combination faucets comprised of two valves and a common spout. The combination faucets are simply a mechanical advancement over the single type in controlling the flow of water in such a manner that hot and cold water may be mixed. In this connection, it is pertinent to note that item 680.20, TSUS, as originally published for hearing by the Tariff Commission, was similar in language to heading 84.61 of the *Brussels Nomenclature* (1955).[1] See *Tariff Classification Study, Explanatory and Background Materials*, Schedule 6 (Nov. 1960), at 460 and 881–882. In the *Explanatory Notes*

---

[1] Item 680.20, TSUS, as originally published for hearing by the Tariff Commission provided:

"Taps, cocks, valves, and similar appliances, for pipes, boiler shells, tanks, vats, and similar articles, including pressure-reducing valves and thermostatically-controlled valves:
　Hand-operated and swing-check valves".

*to the Brussels Nomenclature*, 1955, Volume III at 915, among the articles included in heading 84.61 are: "(12) Mixing taps and valves, with two or more inlets and a mixing chamber."

In view of the foregoing considerations, I find no merit in plaintiff's contention that the provisions for taps and cocks in item 680.20, TSUS, are limited to devices with a single moving part. Therefore, the combination faucets, having both hot and cold water valves and a common spout, are properly classifiable as taps or cocks under item 680.20, TSUS.

The centerset faucets, however, which comprise a pop-up valve as well as hot and cold water valves are, "more than" taps or cocks within the common meaning of those terms. As previously mentioned, the pop-up feature is designed to retain water in the basin and to control the flow of waste water and thus is obviously a significant element of the article.

To reiterate, defendant urges (in the alternative) that if the imported merchandise is not within the common meaning of "taps" or "cocks", then the merchandise is classifiable under item 680.20, TSUS, as "similar devices * * * used to control the flow of liquids * * *".[2] Respecting such contention, both parties agree that the doctrine of *ejusdem generis* is applicable. That doctrine is frequently invoked by the courts to ascertain the meaning or scope of a general description following particularly enumerated articles. *United States* v. *Damrak Trading Co., Inc.*, 43 CCPA 77, C.A.D. 611 (1956); *Nomura (America) Corp.* v. *United States*, 62 Cust. Ct. 524, C.D. 3820 (1969); *Kotake Co., Ltd., American Customs Brokerage Co.* v. *United States*, 58 Cust. Ct. 196, C.D. 2934 (1967). Thus, defendant argues that taps, cocks and valves control the flow of liquids, which is their common function; and that inasmuch as the imports also function primarily to control the flow of liquids, they are similar devices to taps, cocks and valves within the purview of item 680.20. I agree.

The centerset articles are essentially combination faucets having hot and cold water valves with an additional feature—the pop-up valve. Nevertheless, the presence of the pop-up valve does not alter the function of the article to control the flow of water, and hence is *ejusdem generis* with taps, cocks and valves.

In conclusion, I need not decide whether the imports are also sanitary wares or parts thereof, or articles of a type used for household use, as claimed by plaintiff, since in any event they are more specifically described in item 680.20, TSUS.

The protest is overruled, and judgment will issue accordingly.

---

[2] Defendant does not contend that the merchandise is classifiable as "valves".